

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

June 24, 1957

Honorable William J. Gillespie        Opinion WW-169.
County Attorney
Lubbock County                        Re: The use of force by
Lubbock, Texas                            law enforcement offi-
                                          cers in exacting
                                          fingerprints from a
Dear Sir:                                 person legally arrested.

        Your opinion request of May 28, 1957, presents the
following questions:

        1.   May law enforcement officers forcibly
take fingerprints from a person legally arrested?

        2.   In the alternative, may law enforcement
officers hold a prisoner until he voluntarily
submits to giving fingerprints?

        In Owensby v. Morris, et al., 79 S.W.2d 934 (Tex.Civ.
App., 1935), the defendant permitted his fingerprinting and
photographing under protest.  The court stated at page 935:

        ". . . we do hold that a peace officer who
    has good cause to believe, and does believe that
    a person is then compounding a crime, for which
    the officer will be under duty to procure his ar-
    rest, may detain him, take his fingerprints, have
    him photographed, and otherwise identify him, for
    the protection of society, without being liable
    for damages by reason of such official acts.

        "In the case at bar, appellant was so de-
    tained and, after being photographed, etc., was
    permitted to leave."

        In Bartletta v. McFeeley, 107 N.J.Eq. 141, 152 A. 17
(1930), aff'd. on other grounds, 109 N.J.Eq. 241, 156 A. 658
(1931), the defendant thrust his hands into his pockets and de-
clared that the prints of his fingers should not be taken.  Af-
ter some discussion, he submitted, under protest, and upon the
advice of his counsel, and the officer in charge made the finger-
prints.  The court held:

"Counsel for the complainant contends that it is unlawful for the police in any case to photograph or fingerprint an accused person before trial and conviction except under the consent of the prisoner. I am convinced that this is not the law. The police are charged with the duty of preventing crime, apprehending criminals, and gathering evidence upon which they may be brought to trial. In the performance of this duty, they may use any apt and reasonable means which do not invade the rights of the accused or of other persons. Fanciful rights of accused persons cannot be allowed to prevent the functioning of the police and so to jeopardize the safety of the public. . . ."

The court stated further:

". . . Whether any certain prisoner is to be fingerprinted and photographed is an administrative question to be determined by the head of the police department making the arrest, or by those subordinates to whom he may delegate the decision. . . ."

The Court of Criminal Appeals of Texas, in Conners v. State, 134 Tex.Crim. 278, 115 S.W.2d 681 (1938), held that admission of proof of taking of defendant's fingerprints while he was under arrest did not violate the provision of the Bill of Rights in the Texas Constitution (Art. I, Sec. 10) which provides that an accused cannot be required to give evidence against himself.

One of the leading cases on fingerprinting is United States v. Kelly, 55 Fed.2d 67 (2nd Cir., 1932), with the opinion by Judge Augustus N. Hand. Applicable language from this decision is:

"We find no ground in reason or authority for interfering with a method of identifying persons charged with crime which has now become widely known and frequently practiced both in jurisdictions where there are statutory provisions regulating it and where it has no sanction other than the common law.

"The appellee argues that many of the statutes and the decisions in common-law states have allowed

finger printing only in case of felonies.  But, as a means of identification, it is just as useful and important where the offense is a misdemeanor, and we can see no valid basis for a differentiation.  In neither case does the interference with the person seem sufficient to warrant a court in holding finger printing unjustifiable. It can really be objected to only because it may furnish strong evidence of a man's guilt.  It is no more humiliating than other means of identification that have been universally held to infringe neither constitutional nor common law rights. Finger printing is used in numerous branches of business and of civil service, and is not in itself a badge of crime.  As a physical invasion it amounts to almost nothing, and as a humiliation it can never amount to as much as that caused by the publicity attending a sensational indictment to which innocent men may have to submit.

". . . We prefer, however, to rest our decision upon the general rights of the authorities charged with the enforcement of the criminal law to employ finger printing as an appropriate means to identify criminals and detect crime.

"The taking of photographs and fingerprints cannot be regarded as a penalty.  If it were, such records could never be made.  An accused cannot be punished before trial, nor, in the absence of special statutes, could such a 'penalty' be included in the sentence after conviction.  In this regard, taking photographs and fingerprints must be considered the same as any other administrative procedure of the police to which an individual must, at times, be subjected for the common good."

The exaction of fingerprints by law enforcement officers over the objection of a person legally arrested does not violate the privilege against self-incrimination, nor does it violate individual privacy.

Since an objection to fingerprinting by a person legally arrested is to no avail, law enforcement officers may employ such force as is reasonably necessary to accomplish the fingerprinting.

Since fingerprints may be exacted by law enforcement officers, using such force as is reasonably necessary, and since

the second question asked is phrased in the alternative, its answering is unnecessary.

## SUMMARY

Law enforcement officers may use such force as is reasonably necessary in the exaction of fingerprints from a person legally arrested.

Very truly yours,

WILL WILSON
Attorney General of Texas

By
John R. Lennan
Assistant

JRL:pf:wb

APPROVED:

OPINION COMMITTEE:

H. Grady Chandler, Chairman
Jas. H. Rogers
John H. Minton, Jr.
Jack Goodman

REVIEWED FOR THE ATTORNEY GENERAL

BY:  Geo. P. Blackburn